MEYERS, ADMINISTRATOR, RESPONDENT, *v.* SAVERY, APPELLANT.

[Submitted March 30, 1897. Decided April 5, 1897.]

*Trespass—Permission to Enter.*

TRESPASS.—Where it appears from the evidence that the defendant entered upon land and cut and removed hay therefrom under an agreement with plaintiff that he might do so, a verdict against the defendant for trespass should be set aside.

*Appeal from District Court, Deer Lodge County.* *Theodore Brantley, Judge.*

TRESPASS by Julia M. Peterson against J. C. Savery. From a judgment for plaintiff, and from an order overruling a motion for new trial, defendant appeals. Pending the appeal, plaintiff died, and J. H. Meyers, her administrator, was substituted in her stead. Reversed.

Statement of the case by the justice delivering the opinion.

Trespass.    Plaintiff's intestate sued for damages by reason of defendant's alleged trespass on certain land claimed by plaintiff, and for cutting hay thereon in the years 1889, 1890 and 1891.    Defendant denied the allegations of the complaint, and set up the statute of limitations.    The court decided that the special plea was well taken in so far as it related to damages alleged for the years 1889 and 1890.    Whether defendant was liable for the hay cut in 1891 was the question tried. The jury found for the plaintiff on this issue.    Defendant moved for a new trial, which was denied.    He appeals from the judgment and order overruling the motion for a new trial. Mrs. Peterson having died since this appeal was taken, J. H. Meyers, administrator, was substituted as plaintiff.

*Forbis & Forbis*, for Appellant.

*W. Trippet* and *J. H. Meyers*, for Respondent.

HUNT, J.—The appellant makes the point that the evidence shows the acts complained of were done with the consent of the plaintiff's intestate, and that, therefore, the verdict of the jury cannot stand.    The court instructed that if the jury found from the evidence that the defendant entered upon the land in question by and with the consent of plaintiff, and under such consent, and by and with the permission of plaintiff, cut the hay in dispute, then the plaintiff could not recover, and their verdict should be for the defendant.    If, therefore, the evidence does show that the hay cut upon the land was cut with Mrs. Peterson's consent, and that the defendant entered upon the land with the original plaintiff's consent, the appellant's point must be sustained.    Now, when we come to look at the evidence, we find that the plaintiff's intestate not only failed in her proof of a trespass, but, by her own witness, established the fact that the entry upon the land in question was made in accordance with her expressed permission and consent.    The plaintiff herself testified that she and the de-

fendant had had some quarrel over the right to cut hay upon the land she claimed in 1889, but that in 1890 they adjusted the matter, and cut the hay together; Savery cutting half, and she half.   In 1891, the plaintiff testified, Mr. Hawks (who was then employed by Mr. Savery, the superintendent of the Cable Mining Company) went to see her about the cutting of the hay and told her that Savery had written to him to go down and talk with her about cutting hay, and that in response to a statement that she had to have some money, Hawks told her that he would do as well for her as he could, but that he could not pay for the hay until Mr. Savery came down himself, and that she could make an agreement with Savery about it.   She also swore that she saw Savery in 1891, and that he told her he would not pay her anything, and that he and she each cut one-half of the hay that year.   On cross-examination she said that in 1890 they had had the agreement referred to, whereby each was to cut one-half, but that the third year she and Savery had no arrangement, because Hawks came over, and tried to settle with her, but that Hawks loaned his mower to her that year to cut the hay with.   There was other evidence bearing upon the fact that in 1890 Mrs. Peterson and defendant had had an agreement by which it was understood that they would run a line through the ground, and each one cut on his or her side of the line.   Plaintiff's last witness was J. D. Hawks, the person referred to in her own testimony.   Hawks testified, in substance, that he had had charge of the cutting of the hay in 1889, 1890, and 1891, in accordance with instructions given him by the defendant Savery.   On cross-examination Hawks said that in 1890 there was an agreement made between Savery and the plaintiff, and that they drew a line in the field already referred to; that in 1891 he made an agreement with Mrs. Peterson, in pursuance of which agreement they drew a line, and the Cable company was to cut on one side thereof, and Mrs. Peterson on the other; that the hay, in 1891, was cut by the direction of Savery, and that the only agreement between the plaintiff and the witness in behalf of Savery was that they (the Cable company) would cut on one side of the

line in the field, and she would cut on the other; that there was no agreement about paying for the hay, although plaintiff wished the witness to sign some paper, but he would not do so; that it was agreeable to Mrs. Peterson that the witness should cut the hay in 1891; and that the agreement entered into was before the hay was cut, and was made to settle the differences between them, so that the hay could be cut, as the right to cut it was in dispute, and both parties claimed it, but that there was no agreement made with the plaintiff about payment to her; that in that year witness loaned to plaintiff a mower to cut hay with on her side of the line.

It will be observed that the plaintiff nowhere testified directly that an agreement was made, or denied that one was not made, with Hawks, as testified to by Hawks; but she does say that Savery cut one-half of the hay, and that she cut the other half. It is true, she states that there was no arrangement in 1891 with Savery, but she tells of the visit of Hawks to her, whereat they talked about cutting the hay, and that Hawks that year loaned her his mower.    When the plaintiff was recalled on the trial, and testified that she knew nothing about the Cable company cutting hay (of which company Savery was superintendent, it appears), she said that she and Savery had quarreled about a settlement, and that Savery had agreed to pay her for the hay "if he won the case."    There was also at that interview between plaintiff and defendant a question as to which one was granting the privilege of cutting the hay to the other, Savery saying, "I will let you cut it," while the plaintiff said, "I will let you cut;" and thereupon Savery loaned plaintiff the mower wherewith she cut the hay.    When we consider the entire evidence of the plaintiff herein, in connection with the positive and uncontradicted statements of her own witness Hawks that there was an arrangement by which she permitted him to cut the hay in 1891, it seems to us clear that the hay cut in 1891 and the entry upon the land were by the consent of plaintiff.

The respondent suggests in the brief of her counsel that it is apparent that the defendant intended to take the hay at all hazards and in any event, and that, if there was any agree-

ment, it was a forced one as to the division of the ground. But we think this argument is wholly unwarranted by the testimony, which shows, as said before, a voluntary acquiescence and agreement by plaintiff with Hawks for his principal, whereby each cut the hay on his or her respective sides of the line agreed upon.    Our conclusion is that the verdict was against the evidence and instructions of the court, and that a new trial ought to have been granted.

The further point raised by the appellant, that the evidence shows that the acts of Hawks and Savery were those of the Cable company is immaterial, for whether the acts done were those of the Cable company or of Savery is unimportant, under the view we take of the evidence.    The judgment is reversed, and the cause remanded, with directions to the district court to grant a new trial.

*Reversed and Remanaed.*

Pemberton, C. J., and Buck, J., concur.